IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL D. NAUMES, an individual; and SUSAN F. NAUMES, an individual,<br><br>        Plaintiffs,<br><br>    v.<br><br>STAR BUFFET, INC., a Delaware Corporation,<br><br>        Defendant.| Case No. CV-07-516-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for summary judgment and a motion to strike filed by plaintiffs, the Naumes.  On August 1, 2008, the Court heard oral argument on the motion for summary judgment and took it under advisement as the final briefing on the motion to strike had not been received.  On September 1, 2008, the Court received the final brief on the motion to strike, and both motions are now at issue.  The Court shall grant in part the motion for summary judgment, finding Star Buffet liable to the Naumes in the partial sum of $48,814.03, and finding Star Buffet obligated to restore the basement and carpet to its condition

**Memorandum Decision and Order – Page 1**

prior to the November 2006 water leak. On other issues, the Court finds questions of fact preclude summary judgment. In addition, the Court finds that the motion to strike is moot. The Court's analysis is set forth below.

## SUMMARY JUDGMENT STANDARD OF REVIEW

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.

**Memorandum Decision and Order – Page 2**

*McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.  If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim.  *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Id.* at 256-57.  The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex,* 477 U.S. at 324.

## ANALYSIS

The Court will not recite the factual background of this case but will proceed directly to an analysis of the issues raised by the motion for summary

**Memorandum Decision and Order – Page 3**

judgment.

**1.   <u>Basement and Carpet Replacement</u>**

The largest single item of recovery sought by the Naumes is $159,273.75 to renovate the basement and replace the carpet. It is undisputed that the basement & carpet were ruined by a water leak in November of 2006. This was during the term of the lease (which did not expire until March of 2008).

Star Buffet agreed in the Lease (at ¶ 13) that "in the event of damage to the leased premises by fire or other casualty, [Star Buffet], at its sole expense, shall promptly restore the lease property as nearly as possible to its condition prior to such damage or destruction." The term "casualty" clearly encompasses water damage from a water leak. Thus, ¶ 13 obligates Star Buffet to restore the basement & carpet to its condition prior to the water leak occurring in November of 2006.

Star Buffet responds that it had turned off the water in 2005 when it left the building, and that the leak and resulting damage were caused by the Naumes turning the water back on. But it is undisputed that Naumes turned the water back on so that their fire sprinkler system would work, and notified Star Buffet that it would do so. *See Exhibit N to Naumes Affidavit*. Nothing in the lease prevents the Naumes from turning the water back on. And once the water is on, the Lease obligates Star Buffet to restore any area damaged if that water leaks.

**Memorandum Decision and Order – Page 4**

Moreover, there is nothing in the Lease that absolves Star Buffet of its obligations just because it vacates the building.  Star Buffet knew that the water was being turned back on by the Naumes yet took no steps to remove the obligations imposed upon it by the Lease.

For these reasons, Star Buffet owes to the Naumes, as a matter of law, the amount necessary to restore the basement to the condition it was in prior to the November 2006 water leak.  However, the record does not reveal what condition the basement was in prior to the November 2006 water leak.  Thus, there is no base-line to decide precisely how much money Star Buffet owes to the Naumes to restore the basement.

Accordingly, the Court will only grant a partial summary judgment on this issue, finding as a matter of law that Star Buffet owes to the Naumes the amount necessary to restore the basement and carpet to the condition they were in prior to the November 2006 water leak, but denying summary judgment as to the amount owed.

2.  **Repair of Water Damage**

The Naumes claim $21,768.67 for repairs of the November 2006 water leak for items other than restoration of the basement and replacement of the carpet.  As the Court has just held, these repairs are the obligation of Star Buffet.  Unlike the

**Memorandum Decision and Order – Page 5**

prior issue, the sum sought here is precise and subject to award in this summary judgment proceeding. Accordingly, the Court will award the Naumes the sum of $21,768.67 for repairs done as a result of the November 2006 water leak, not including the restoration of the basement and replacement of carpet.

**3.     Water Bill**

The Naumes seek $1,901.64 to pay their utility bill for water. This is clearly a Lease obligation and the Court has found that Star Buffet did not absolve itself of responsibility for this obligation simply by vacating the premises. Hence, the Court will award this sum in summary judgment.

**4.     Roof & Parking Lot**

The Naumes seek $64,017 to replace the roof, and $71,318.40 to repair the parking lot. There is conflicting evidence, however, concerning the conditions of the roof and parking lot. To counter the Naumes' allegations that the parking lot had deteriorated to the point where it had to be replaced, Star Buffet submitted the affidavit of John Schulstad, a Star Buffet Vice-President in charge of operations and maintenance of the restaurants. He testified that he evaluated the parking lot in January 2008, and found it "in an acceptable condition" and that had Star Buffet been looking to open this site as a restaurant, the parking lot "would have been

**Memorandum Decision and Order – Page 6**

acceptable for use in its current condition." *See Schulstad Affidavit* at ¶ 10.[1] This testimony creates a genuine issue of material fact on the condition of the parking lot, precluding a summary judgment on this issue.

With regard to the roof, the Naumes submitted the affidavit of Dave Huddleston who testified that a total roof replacement was necessary. *See Huddleston Affidavit* at ¶ 12(b). In response, Star Buffet filed the affidavit of Jason Vinson, its project manager, stating that the roof had been repaired and was in excellent shape in early 2008.[2] This conflict precludes summary judgment on the roof issue.

Moreover, the Lease Agreement is ambiguous as to which party has the responsibility for capital improvements. In paragraph 4, Star Buffet agrees to "pay all rents, taxes, assessments and charges due on the premises before such amounts become delinquent and shall pay and hold Landlord harmless therefrom." Paragraph 4 is labeled "Rent," and the context of the paragraph may limit the term "charges" to some type of regularly assessed fee akin to taxes or rents rather than capital improvements. At the same time, however, the term "charges" is broad enough to encompass replacement of a parking lot or roof. The Court cannot

---

[1] Plaintiff's motion to strike various portions of defendant's affidavits does not seek to strike this paragraph of the Schulstad affidavit

[2] Plaintiff's motion to strike did not seek to strike Vinson's affidavit.

**Memorandum Decision and Order – Page 7**

answer this ambiguity in a summary judgment proceeding.

In Paragraph 8 of the Lease Agreement, Star Buffet agrees to "keep the premises in good order, condition, and repair . . . ." Reading this paragraph together with paragraph 4, Star Buffet may have had obligations to pay for both repairs and capital improvements. But if paragraph 4 is limited to regular assessments akin to taxes and rents, Star Buffet only had to pay for repairs. This does not end the inquiry, however, because the record raises questions whether Star Buffet let the parking lot and roof deteriorate to the point where its obligation to repair was triggered.

All of these questions preclude summary judgment on the roof and parking lot issues.

### 5. Two Months Lost Rent

The Naumes seek $13,750 for two months of lost rent. The Lease expired in March of 2008. The Naumes demand rent for April and May of 2008 on the ground that repairs to the basement have prevented them from renting out the building. For each of those two months, they seek the monthly rent that Star Buffet was obligated to pay under the Lease – $6,875.[3]

---

[3] Although the Naumes originally sought a higher figure for a monthly rent, they later scaled back their request to the same rent being paid by Star Buffet.

**Memorandum Decision and Order – Page 8**

Although the Court has held that the precise amount of the basement repairs cannot be set in this summary judgment, the Court has also held that those repairs were the obligation of Star Buffet. Hence, if the Naumes were unable to rent out the building for a reasonable period of time due to Star Buffet's breach of its obligation to restore the basement, Star Buffet would be liable for the fair rental value lost during that reasonable period of delay.

Star Buffet does not dispute that the Naumes were unable to rent out the building due to the restoration repairs, and also do not dispute that two months is a reasonable period of delay for the restoration. Thus, the Court finds that Star Buffet is liable for $13,750 in lost rent for the months of April and May of 2008.

### 6. Property Taxes

The Naumes seek $4,134 in prorated property taxes for 2008. It is not entirely clear under the Lease agreement when these are due. The Court will therefore deny summary judgment on this matter.

### 7. Friesz & Boggess Expenses

Friesz and Boggess acted as property managers once Star Buffett vacated the premises. Star Buffet does not attempt to evade its obligation for their fees and expenses as property managers, but argues that mixed in with those fees are some for preparing the property for sale. The Naumes agree those are improper, and

**Memorandum Decision and Order – Page 9**

have now withdrawn them. Accordingly, the Court will award $8,243.72 representing Friesz's expenses and fees, and $3,150 represented Boggess's expenses and fees.

**8.    Prejudgment Interest**

Because the Court has denied summary judgment on some issues, the Court will not resolve the pre-judgment interest issue until the sums due are finally resolved.

**9.    Conclusion on Summary Judgment Motion**

    a.    In conclusion the Court finds the following:

        i.    **Basement & Carpet**:   Star Buffet has the obligation to restore the basement and carpet to its condition prior to the November 2006 water leak, but the Court cannot determine the sum necessary to complete that restoration at this time.

        ii.    **Other Water Leak Repairs**: The Court awards the Naumes $21,768.67 in repairs caused by the November 2006 water leak (other than to restore the basement and replace carpet).

        iii.    **Water Bill**: The Court awards the Naumes $1,901.64 for the utility bill for water.

        iv.    **Roof & Parking Lot**:   The Court denies summary judgment on

**Memorandum Decision and Order – Page 10**

these two items.

 v. **Two Months Lost Rent**: The Court awards the Naumes $13,750 for rent for April and May of 2008 because delays caused by basement repairs rendered the building un-leasable during that time.

 vi. **Property Taxes**: The Court denies summary judgment on this item.

 vii. **Friesz & Boggess Expenses**: The Court award the Naumes $8,243.72 representing Friesz's expenses and $3,150 representing Boggess's expenses.

 viii. **Prejudgment Interest**: The Court will deny summary judgment on this issue.

**10. Naumes' Motion to Strike**

The Naumes move to strike certain items submitted by Star Buffet in response to the Naumes' motion for summary judgment. As indicated above, the matters referred to by the Court were not the subject of the motion to strike – the Court did not refer to any disputed items in its partial denial of the Naumes' motion for summary judgment. For that reason, the motion is moot. The Naumes' may raise the motion again if Star Buffet attempts at trial to admit the same

**Memorandum Decision and Order – Page 11**

evidence challenged in this motion.  The parties should be aware that the Court strictly enforces the Federal Rules on discovery, and will not hesitate to apply the sanctions of Rule 37 when appropriate.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the Naumes' motion for summary judgment (Docket No. 10) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks a partial judgment against Star Buffet in the sum of $48,814.03, and a ruling that Star Buffet is liable to the Naumes for the amount necessary to restore the basement to the condition it was in prior to the November 2006 water leak.  It is denied in all other respects.

IT IS FURTHER ORDERED, that the motion to strike (Docket No. 22) is DEEMED MOOT without prejudice to the right of the Naumes to object to the admission of evidence at trial on the same grounds.

DATED:  **September 12, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge